UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LJ., individually, and on behalf of P.J., a minor )
)
)
Plaintiffs, )
) **COMPLAINT**
)
v. )
)
)
REGENCE BLUESHIELD WASHINGTON )
)
Defendant. )
)
)

Plaintiffs L.J., individually and on behalf of P.J., and P.J. (together, "Plaintiffs"), by and through undersigned counsel, hereby complain against Defendant Regence BlueShield Washington ("Regence"), alleging in the totality and alternatively as follows:

**INTRODUCTION**

L.J. was a participant in an employer-sponsored health benefits plan fully insured and administered by Regence and enrolled their child, P.J. as a beneficiary. P.J. received 13 weeks of medical treatment at Trails Carolina. Plaintiffs submitted a claim for benefits for the service under the plan. Regence denied payment for any of the treatment, requiring Plaintiffs to incur more than $67,000 out of pocket. Regence's denial was based on the assertion that the treatment P.J. received

COMPLAINT
Page - 1

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

was "not a covered service" because it was subject to an exclusion in the Plan. This litigation thus centers around the narrow issue of whether the Regence's grounds for denials were valid.

## PARTIES, JURISDICTION, AND VENUE

1. This case involves mental health treatment and other confidential medical and mental health information. Using the Plaintiffs' full surnames would render them identifiable and would intrude upon private health care matters including matters protected by HIPAA.

2. Plaintiffs incorporate herein the medical records and claim-related documents previously provided by them to the Regence.

3. Plaintiffs are residents of Seattle, Washington.

4. L.J. is P.J.'s parent.

5. Through her employment, L.J. was enrolled as a participant in an employer-sponsored plan fully insured and administered by Regence, the Regence EmployeeChoice Silver HSA 4250 Preferred Plan ("the Plan").

6. P.J. is L.J.'s dependent child.

7. As L.J.'s dependent child, P.J. was at all times relevant hereto, a beneficiary under the Plan.

8. Regence handled the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

9. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Regence fully insured the Plan and was the Plan Administrator, and was a fiduciary of the Plan.

10. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief

COMPLAINT
Page - 2

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

under 29 U.S.C. § 1132(a)(3) based on Regence' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

11.    This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

12.    Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

**FACTUAL ALLEGATIONS**[1]

*Allegations regarding the Plan*

13.    Regence issued a booklet describing the medical benefits provided by the Plan (the "Benefit Booklet").

14.    Upon information and belief, Plaintiffs allege that the Benefit Booklet constitutes the official summary plan description for the Plan.

15.    Under the terms of the Plan, Regence provides the healthcare benefits described in the Benefit Booklet to covered Members, including L.J. and P.J.

16.    The Plan provides benefits for mental health treatment - it explicitly states: "Mental Health Services are covered for treatment of Mental Health Conditions."[2]

17.    According to the Plan:

> Mental Health Services mean Medically Necessary outpatient services, Residential Care, partial Hospital program or inpatient services provided by a licensed facility or licensed individuals with the exception of Skilled Nursing Facility services (unless the services are provided by a licensed behavioral health Provider for a

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.

[2] Benefit Booklet at p. 39 of 107.

COMPLAINT
Page - 3

covered diagnosis), and court ordered treatment (unless the treatment is Medically Necessary).[3]

18.     The Plan defines "Mental Health Conditions:"

Mental Health Conditions mean mental disorders, including eating disorders, in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association except as otherwise excluded. Mental disorders that accompany an excluded diagnosis are covered.[4]

19.     The Plan has the following definition of "Residential Care" that applies to Mental Health Service benefits:

Residential Care means care in a facility setting that offers a defined course of therapeutic intervention and special programming in a controlled environment that also offers a degree of security, supervision and structure, and is licensed by the appropriate state and local authority to provide such services. Patients also must be medically monitored with 24-hour medical availability and 24-hour onsite clinician services. Residential Care does not include half-way houses, supervised living, group homes, wilderness courses or camps, Outward Bound, outdoor youth programs, outdoor behavioral programs, boarding houses, or settings that primarily either focus on building self-esteem or leadership skills or provide a supportive environment to address long-term social needs, however services by Physicians or Practitioners in such settings may be covered if they are billed independently and otherwise would be covered.[5]

20.     An exclusion for coverage for "Adventure, Outdoor, or Wilderness Interventions and Camps" can be found in the exclusion section of the Plan:

**Adventure, Outdoor, or Wilderness Interventions and Camps**
Outward Bound, outdoor youth or outdoor behavioral programs, or courses or camps that primarily utilize an outdoor or similar non-traditional setting to provide services that are primarily supportive in nature and rendered by individuals who are not Providers, are not covered, including, but not limited to interventions or camps focused on:
- building self-esteem or leadership skills;
- losing weight;
- managing diabetes;
- contending with cancer or a terminal diagnosis; or
- living with, controlling or overcoming:
  - blindness;

---

[3] Benefit Booklet at p. 40 of 107.
[4] Benefit Booklet at p. 20 of 107.
[5] Benefit Booklet at p. 20 of 107.

COMPLAINT
Page - 4

- deafness/hardness of hearing;
- a Mental Health Condition; or
- a Substance Use Disorder.

Services by Physicians or Practitioners in adventure, outdoor or wilderness settings may be covered if they are billed independently and would otherwise be a Covered Service in this Booklet.[6]

21. The Plan does not define or describe "wilderness courses or camps," or "outdoor behavioral programs" that are excluded from coverage by the Plan.

22. The Plan contains the following definition of a "Provider:"

Provider means:
- a Hospital;
- a Skilled Nursing Facility;
- an Ambulatory Surgical Center;
- a Physician;
- a Practitioner; or
- other individual or organization which is duly licensed to provide medical or surgical services.[7]

23. The Plan defines "Practitioner" as:

Practitioner means a healthcare professional, other than a Physician, who is duly licensed to provide medical or surgical services. Practitioners include, but are not limited to:
- chiropractors;
- psychologists;
- registered nurse practitioners;
- advanced registered nurse practitioners (ARNPs);
- certified registered nurse anesthetists;
- dentists (doctor of medical dentistry, doctor of dental surgery, or a denturist); and
- other professionals practicing within the scope of their respective licenses, such as massage therapists, physical therapists and mental health counselors.[8]

24. As more fully described below, the mental health counselors and other staff members at Trails Carolina fell under the Plan's definition of Practitioners because they were

---

[6] Benefit Booklet at p. 42 of 107.
[7] Benefit Booklet at p. 105 of 107.
[8] Benefit Booklet at p. 105 of 107.

COMPLAINT
Page - 5

professionals practicing with the scope of their licenses, and therefore, also fell under the Plan's definition of a Provider.

25.    The Plan includes a definition of "Medically Necessary" or "Medical Necessity:"

Medically Necessary or Medical Necessity means health care services or supplies that a Physician or other health care Provider, exercising prudent clinical judgment, would provide to a patient to prevent, evaluate, diagnose or treat an Illness, Injury, disease or its symptoms, and that are:
- in accordance with generally accepted standards of medical practice. "Generally accepted standards of medical practice" means standards that are based on credible Scientific Evidence published in Peer-Reviewed Medical Literature generally recognized by the relevant medical community, Physician Specialty Society recommendations and the views of Physicians and other health care Providers practicing in relevant clinical areas and any other relevant factors.
- clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's Illness, Injury or disease;
- not primarily for the convenience of the patient, Physician or other health care Provider; and
- not more costly than an alternative service or sequence of services or supply at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's Illness, Injury or disease.

Medical Necessity determinations are made by health professionals applying their training and experience, and using applicable medical policies developed through periodic review of generally accepted standards of medical practice.[9]

*Background of P.J.'s medical issues and treatment.*

26.    P.J. was 13-years old at the time of admission to Trails Carolina.

27.    P.J. was diagnosed with autism spectrum disorder, attention deficit hyperactivity disorder, and parent-child relational problem under the criteria described in the DSM-5.

28.    L.J., along with mental health and educational professionals, determined that the most appropriate provider for P.J.'s specific mental health needs was Trails Carolina.

29.    Trails Carolina was licensed by the state of North Carolina as a therapeutic outdoor behavioral health program that provided mental health services for youth ages 10-17.

---

[9] Benefit Booklet at p. 105 of 107.

COMPLAINT
Page - 6

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

30.     Trails Carolina provided mental health treatment programs that were less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

31.     P.J. received treatment for the disorders with which P.J. was diagnosed at Trails Carolina from July 3, 2023 to October 5, 2023.

32.     Staff members at Trails Carolina who provided mental health treatment to P.J. included at least one Licensed Clinical Mental Health Counselor and other licensed professionals.

33.     P.J. benefitted from the intensive mental health treatment received at Trails Carolina and had improvements in each diagnosed condition and related symptoms from the services provided by Trails Carolina.

34.     Trails Carolina charged $67,925 for the services it provided to P.J., which charges were submitted to Regence.

35.     Regence denied all of Trails Carolina's charges for the services it provided to P.J.

36.     The Explanations of Benefits ("EOBs"), dated January 5, 2024, contained the following rationale for denying claims for P.J.'s treatment at Trails Carolina: "This is not a covered service. Please refer to the Exclusions section in the member's benefit plan. You are responsible for these services."

37.     In a letter dated June 25, 2024, L.J. submitted a Level One Member Appeal review of Regence's benefit denial of the claims submitted by Trails Carolina.

38.     The appeal consisted of more than 1,800 pages of materials including medical records and other documents supporting the arguments and representations made in the appeal.

39.     In the appeal, among other things, L.J.:

COMPLAINT
Page - 7

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

a.  Noted that the Plan is subject to ERISA, and as such, Regence was obligated to provide Plaintiffs with certain rights with review of the appeal, including a review that considers all information submitted by Plaintiffs relating to the claim;

b.  Requested Regence assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the state of North Carolina, where Trails Carolina is located;

c.  Pointed out that Regence was required to provide Plaintiffs with a response that was clear, specifically stated the reasons for the determination, referenced the Plan language on which Regence's decision was based, and explained what other information Plaintiffs could provide to perfect their claims;

d.  Noted that the Plan provides benefits for a "Covered Service" which include "Mental Health Services;"

e.  Showed that Trails Carolina fell under the Plan's definition of a "Provider" because Trails Carolina was a 24/7 outdoor behavioral health treatment facility that was duly licensed by the state of North Carolina to provide outdoor behavioral health services to adolescents;

f.  Distinguished the programs that the Plan excludes from its definition of "Residential Care" from the intermediate behavioral health program provided by Trails Carolina;

g.  Argued that the services Trails Carolina provided to P.J. were "Medically Necessary" as that term is defined by the Plan, and were consistent with

COMPLAINT
Page - 8

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

generally accepted standards of medical practice, and provided medical records and other documents to support this argument;

h. Noted that Trails Carolina's programs did not clearly fall within the Plan's exclusion for "Adventure, Outdoor, or Wilderness Interventions and Camps" because the terms used in that exclusion were not defined or described by the Plan;

i. Argued that the exclusion for "Adventure, Outdoor or Wilderness Interventions and Camps did not apply to P.J.'s treatment at Trails Carolina because the services were not primarily supportive in nature and were not rendered by individuals who are not "Providers" as that term is defined by the Plan;

j. Expresses a concern that Regence may be applying a prohibited nonquantitative treatment limitation ("NQTL") based on facility type or provider specialty by categorically excluding all outdoor behavioral health programs;

k. Expressed a belief that Regence may be imposing stricter standards for intermediate behavioral health facilities compared to intermediate medical and discriminating against intermediate behavioral health providers like Trails Carolina based on facility type or provider specialty (as-applied facility type NQTL);

l. Expressed a belief that the Plan's "Adventure, Outdoor, or Wilderness Interventions and Camps" exclusion may also impose a facial limitation involving provider specialty (facial provider specialty NQTL);

COMPLAINT
Page - 9

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

m. Expressed a belief that the limited number of in-network providers available as a result of Regence's administration of the Plan may constitute an unlawful NQTL (provider network NQTL) and a violation of the Patient Protection and Affordable Care Act establishing network adequacy standards;

n. Requested Regence conduct a comparative parity analysis to determine whether or not the Plan is truly being administered in compliance with the MHPAEA and provide L.J. with physical copies of any documentation used in the analysis so that L.J. could independently conduct a comparative parity analysis and appropriate plead their case.

40.     In a letter dated July 25, 2024, Regence reported that it had reviewed Plaintiffs' level one appeal request and that the appeal was denied.

41.     In this letter, Regence argued that Trails Carolina was a wilderness therapy camp, and wilderness therapy was not covered by the Plan.

42.     The letter noted that the Plan provides a specific exclusion for wilderness therapy and quoted the Plan's exclusion for Adventure, Outdoor, or Wilderness Interventions and Camps.

43.     The letter asserted that Trails Carolina described itself as a "therapeutic wilderness program" in a 2021 job posting on a job board website.

44.     The letter indicated that Regence sent Plaintiffs' appeal to a physician reviewer who was an MD specializing in psychiatry, child, adolescent, and adult for review, and the reviewer determined that the treatment at Trails Carolina was not medically necessary due to deficiencies in the records provided by Trails Carolina.

COMPLAINT
Page - 10

45.    The letter disputed the applicability and reliability of the literature supporting the benefits of wilderness therapy that was included with the appeal and argued that there was significant research questioning the efficacy of wilderness therapy programs.

46.    This denial was wrongful and unreasonable because Trails Carolina was a covered service under the Plan and did not meet any of the Plan's exclusions.

47.    As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

48.    The denial by Regence/the Plan of benefits solely and directly caused Plaintiffs to incur $67,925 for P.J.'s treatment at Trails Carolina.

49.    After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

50.    Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

51.    The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Regence' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

52.    Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

COMPLAINT
Page - 11

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

53.     All allegations of this Complaint are incorporated here as though fully set forth herein.

54.     ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Regence, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

55.     Regence and the Plan wrongly excluded coverage for P.J.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders.

56.     ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

57.     Regence's denial letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Regence did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

58.     Regence breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in P.J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of P.J.'s claims.

59.     The actions of Regence in denying payment for P.J.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

COMPLAINT
Page - 12

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

## SECOND CAUSE OF ACTION

### (Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))

60.    All allegations of this Complaint are incorporated here as though fully set forth herein.

61.    The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Regence's/the Plan's fiduciary duties.

62.    Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

63.    The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

64.    Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

65.    Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for P.J.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

COMPLAINT
Page - 13

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

66.     The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by Regence for treatment for P.J. at Trails Carolina.

67.     Upon information and belief, Regence' denial of coverage also violated the MHPAEA in application or effect. Because Regence declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

68.     Regence are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

69.     Plaintiffs expressly requested Regence perform a MHPAEA parity analysis of the Plan. They expressed serious concern that Regence was violating the statute and asked for a response using specific and direct examples. Regence failed or declined to do this in its Denial Letter and instead dismissively wrote: "In response to questions about mental health parity, please be aware that we do not cover outdoor camps for any condition, whether medical or behavioral."

70.     These MHPAEA violations by Regence are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a)     A declaration that the actions of Regence violate the MHPAEA;

(b)     An injunction ordering Regence to cease violating the MHPAEA and requiring compliance with the statute;

COMPLAINT
Page - 14

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Regence to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Regence as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Regence of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Regence' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge requiring Regence to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Regence from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)     An Order providing restitution from Regence to Plaintiffs for their loss arising out of Regence' violations of the MHPAEA and unjust enrichment.

71.     In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1.   Judgment in the total amount owed for P. J.'s treatment at Trails Carolina;

2.   Pre- and post-judgment interest to the date of payment;

3.   Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4.   Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5.   For such further relief as the Court deems just and proper.

COMPLAINT
Page - 15

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206)682-0610

DATED this 25th day of June, 2026.

MERRICK, HOFSTEDT & LINDSEY, P.S.

*/s/ Tamara Nelson*
Tamara K. Nelson, WSBA #27679
tnelson@mhlseattle.com
3101 Western Avenue, Suite 200
Seattle, Washington 98121
T: (206) 682-0610 / F: (206) 467-2689

CHRISTENSEN & JENSEN, P.C.

/s/ John M. Mejia
John M. Mejia Utah Bar #13965
(*pro hac vice motion pending*)
john.mejia@chrisjen.com
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
T: (801) 323-5000 / F: (801) 355-3472

*Counsel for Plaintiffs*

COMPLAINT
Page - 16